IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

THOMAS F. UNDERWOOD,  )
          )
   Plaintiff,    )
          )
  vs.      )   5:15-cv-02002-LSC
          )
NANCY A. BERRYHILL,   )
Commissioner of Social Security, )
          )
   Defendant.   )

## MEMORANDUM OF OPINION

## I. Introduction

Plaintiff Thomas F. Underwood appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB").[1] Mr. Underwood timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Underwood was fifty-three years of age age at the time of the Administrative Law Judge's ("ALJ's") decision. Mr. Underwood has a high

---

[1] After a prior denial and a subsequent remand (tr. at 8-19, 526-37), an Administrative Law Judge issued a second unfavorable decision on November 21, 2014. (Tr. at 473-88.) The Appeals Council denied Plaintiff's request for review. (Tr. at 467-72.)

school education, has completed one year of college, and has a commercial real estate license. (Tr. at 30, 138.) His past employment includes work as an engineering technician and a builder/commercial contractor. (Tr. at 52, 135.) He also listed being a commercial realtor from December 2004 until December 2009 as past work, stating that he worked 4-5 days per week for 6-8 hours per day. (Tr. at 151, 154.) Mr. Underwood claims that he became disabled on January 15, 2005, due to diabetes, neuropathy, treatment for non-recurring melanoma, depression, and anxiety. (Tr. at 476.) The last date that Plaintiff was insured for purposes of disability insurance was December 31, 2009.[2]

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the

---

[2]     To be eligible for disability insurance benefits, a claimant must prove he became disabled prior to the expiration of his disability insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. A showing that an impairment became disabling after the expiration of the claimant's insured status is insufficient to establish eligibility for disability insurance benefits. *See Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 13 (11th Cir. 2012) (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). Plaintiff, therefore, had to prove he was disabled on or before December 31, 2009.

plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets, or is medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment, or combination of impairments, does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairments, or combination thereof, does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Underwood last met the insured status requirements of the Social Security Act on December 31, 2009. (Tr. at 478.) She further determined that Mr. Underwood did

not engage in SGA from the alleged onset date of his disability to his date last insured. (*Id.*) According to the ALJ, through the date last insured, Plaintiff's diabetes mellitus and history of removal of malignant melanomas in March and April 2005 with no evidence of recurrence were "severe" impairments based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that Plaintiff did not have any impairments (or combination thereof) that either met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 478-79.)

The ALJ determined that, through the date last insured, Mr. Underwood had the RFC to perform light work as defined in 20 CFR § 404.1567(b) with a sit/stand option, along with the following additional limitations: he could stand for 30 minutes at one time for a total of two hours during an eight hour workday; he could walk for 30 minutes at one time for a total of one hour during an eight hour workday; he could sit for 30 minutes at one time for a total of five hours during an eight hour workday; he could lift 30 pounds occasionally and 20 pounds frequently; he could carry ten pounds occasionally and five pounds frequently; he was restricted from climbing, balancing and crawling; he could perform activities that require stooping, kneeling, crouching, and pushing and pulling with the right arm and left leg; he could not work in extreme cold or heat; he could not work in high

exposed places or be exposed to fumes, noxious odors, dusts, mists, gases, or poor ventilation; and occasionally, he could work around wetness/humidity and in proximity to moving mechanical parts. (Tr. at 479.)

Using the testimony of a Vocational Expert, the ALJ determined that Mr. Underwood was able to perform his past relevant work as an engineering technician through the date last inured. (Tr. at 487.) Thus, the ALJ concluded that Mr. Underwood "was not under a disability, as defined in the Social Security Act, at any time from . . . the alleged onset date, through . . . the date last inured." (Tr. at 488.)

## II.    Standard of Review

This Court has a narrow role in reviewing claims brought under the Social Security Act. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence; however, this Court applies close scrutiny to the Commissioner's legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Underwood argues that the Commissioner's decision should be reversed and remanded for two reasons: (1) the ALJ should have given more weight to the opinions of his treating physician, and (2) the ALJ did not afford proper consideration to his subjective complaints of pain.

## A.  Weight Given to Treating Physician's Opinion

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;"

and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Procedurally, the ALJ must articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" for discounting a treating physician's opinion

exists when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in a physician's evaluation of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Scott Royster has treated Plaintiff since 1992. (Tr. at 515.) He offered multiple opinions on Plaintiff's condition, many of them sought out by Plaintiff and

his counsel for purposes of his disability application. (Tr. at 270, 274, 339-42, 404, 700-01, 702, 703-07, 735-39, 740- 41, 482-86). For example, Dr. Royster wrote a letter on March 23, 2010, in which he stated that Plaintiff had diabetic neuropathy, that his diabetes was progressive and incurable, and that he was disabled and no longer able to work. (Tr. at 270.) When he saw Plaintiff on August 10, 2010, he noted that Plaintiff was having stress related to his mother's health problems but did not diagnose him with having depression or anxiety. (Tr. at 271.) On March 16, 2011, Dr. Royster noted that Plaintiff needed a "letter for disability." (Tr. at 273.) Two days later, on March 18, 2011, Dr. Royster wrote a letter stating that Plaintiff's neuropathy was becoming more prominent, his diabetes became more unstable due to stress from his inability to work, and he should be considered disabled and unable to work. (Tr. at 270, 274.) Dr. Royster also completed a Physical Functional Assessment questionnaire on April 19, 2011, in which he opined, among other things, that Plaintiff could sit for five hours during the eight hour workday and for 30 minutes without interruption, could stand for two hours during the eight hour workday and for 30 minutes without interruption, could walk for one hour during the eight hour workday and for 30 minutes without interruption, that he would need a sit/stand option, that he would need to lie down during the day two to three times per week for 60 minutes at a time, and that he

had visual and hearing limitations. (Tr. at 339, 704-05.) He also completed a Mental Functional Assessment questionnaire at the same time in which he opined that Plaintiff is severely limited in his ability to deal with work stresses. (Tr. at 706.) Additionally, Dr. Royster issued letters on July 23, 2014 and September 8, 2014, specifically addressing Plaintiff's medical conditions from January 2005 to December 2009, in which he stated that Plaintiff's diabetes became very difficult to control in 2005, as a result of his skin cancer, and that by 2009, Plaintiff was totally disabled. (Tr. at 701.) Finally, Dr. Royster completed another Physical Functional Assessment questionnaire on July 23, 2014, which placed essentially the same limitations on Plaintiff. (Tr. at 720.)

In an extremely detailed discussion spanning over seven single-spaced pages, the ALJ discussed Dr. Royster's treatment of Plaintiff and explained why she was giving some weight to part of Dr. Royster's April 2011 physical assessment but little weight to other parts. The ALJ accorded some weight to the majority of the physical limitations that Dr. Royster described in April 2011, noting that although the opinion was issued over 16 months after Plaintiff's date last insured, it was still more contemporaneous to Plaintiff's period of alleged disability than Dr. Royster's later assessments, done in 2014. (Tr. at 485-86, 339-40). The ALJ incorporated the sitting, standing, walking, lifting, and exertional limitations that Dr. Royster noted

in Plaintiff's RFC. (Tr. at 479). However, the ALJ afforded little weight to Dr. Royster's opinion in April 2011 that Plaintiff needed to lie down two to three times a week for 60 minutes each time, that Plaintiff had hearing and visual limitations, as well as Dr. Royster's other, later, opinions. (Tr. at 484).

The ALJ had good cause to discount these parts of Dr. Royster's opinions. The ALJ properly found these opinions were inconsistent with Dr. Royster's own treatment notes. For example, as pointed out by Dr. Allan Goldstein, a board certified physician in internal medicine who reviewed Plaintiff's medical records and testified at Plaintiff's hearing as a medical expert, although Dr. Royster stated in a letter that Plaintiff had neuropathy secondary to his diabetes prior to his date last insured, an examination of his treatment notes prior to December 2009 shows no diagnosis of neuropathy or any other complications from diabetes. The treatment notes do not even mention Plaintiff complaining of numbness in hands or feet prior to December 2009.

The ALJ also properly noted that Dr. Royster's opinions were contradicted by other medical opinions in the record. For example, Plaintiff's treating physician for melanoma, Dr. Robert Knowling, reported that Plaintiff's surgical wounds from his mole removals healed with no complications. (Tr. at 199.) Dr. Knowling also repeatedly reported that there was no evidence of recurrence of melanoma. (Tr. at

192-211.) Similarly, Plaintiff's oncologist, Dr. Richard Gualtieri, reported no recurrence of malignant melanoma after diagnosis on March 18, 2005, and treatment surgery on March 31, 2005. (Tr. at 480.) Further, in the five years following treatment, the oncologist reported that Plaintiff stated that he was doing well and had normal activity levels. (Tr. at 481.) The oncologist merely recommended Plaintiff limit his sun exposure as to not become "excessive." (*Id.*) Additionally, Plaintiff's dermatologist, Dr. Lon Raby, saw Plaintiff every few months from July 2005 through at least October 2008 for follow-up visits. (Tr. at 202-211, 215-219.) Dr. Raby also explained that Plaintiff merely "should . . . avoid excessive sun exposure and all sunburns" in a letter date May 12, 2010. (Tr. at 271.) With regard to Plaintiff's diabetes, Dr. Goldstein testified that Dr. Royster's opinion that Plaintiff would need to lie down several times per week was unusual in that diabetes is not in and of itself disabling, especially in a case such as Plaintiff's where it is controlled with insulin. The ALJ also noted there are no other records suggesting that Plaintiff had problems hearing or seeing, as Dr. Royster stated. (Tr. at 486.)

Substantial evidence supports the ALJ's decision to give little weight to parts of Dr. Royster's opinions. Not only were the opinions not contemporaneous to

Plaintiff's period of alleged disability, but they were not supported by his own treatment notes or corroborated by other medical opinions in the record.

## B. Credibility Determination

Plaintiff alleged he was totally disabled due to diabetes and melanoma. (Tr. at 134). Plaintiff asserted melanoma made him close his contractor business because he had to stay out of the sun, and his diabetes advanced in 2009 causing severe neuropathy in his legs and feet that kept him from staying on his feet. (Tr. at 134). Plaintiff also stated that, starting in early 2005, he was unable to work because he had massive cuts secondary to having malignant moles removed, which he asserted prevented him from moving his arm and neck. (Tr. at 45-46). Once he started recovering from the melanoma, Plaintiff asserted his diabetes worsened, starting in 2009 when he claimed he developed neuropathy that affected his arms and legs. (Tr. at 516-17). Plaintiff explained that the corresponding symptoms include hypersensitivity, tingling, burning, and lack of sensation in his feet and legs. (*Id.*) Plaintiff also testified to suffering from depression, as well as having difficulty making decisions, relating to coworkers, and interacting with supervisors. (Tr. at 518.) He claimed that his melanoma treatment caused stress that negatively affected his diabetes and mental health. (*Id.*)

In January 2010, Plaintiff reported his typical day consisted of making coffee, eating breakfast, going for a walk, going to the office if able, eating lunch, watching the news, returning to the office in the afternoon, eating dinner, taking an after-dinner walk, watching the news, talking with his wife and children, and then going to bed. (Tr. at 159). Plaintiff was able to care for a dog, prepare complex meals, perform household chores such as laundry and cleaning, drive, walk, shop, and handle money, and he listed his hobbies as walking, reading, and studying. (Tr. at 160-63). Plaintiff visited with neighbors and friends daily, attended church, could walk for a mile and half, and had no problems following instructions or getting along with authority. (Tr. at 163-65).

Then, during a hearing in April 2011, Plaintiff reported that, on the day before the hearing, he woke up, made breakfast, read, prayed, showered and shaved, fed his dog, went to the market for food, read information related to his case, ate dinner with his wife, went for a walk, sat on the patio with his wife, and then went to bed. (Tr. at 37-40). Plaintiff also reported that he was a commercial realtor until December 12, 2009, and although he did not have any income, he did the technical and listing work in his wife's office such as calculating square footage or evaluating drawings of land. (Tr. at 30-32).

When a plaintiff attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929d(a), (b); Social Security Ruling ("SSR") 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). "When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995). The Commissioner's regulations set forth the following factors an ALJ should consider

when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (2016). The ALJ evaluates these factors in connection with the other evidence in the record to make a credibility determination. 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ partially credited Plaintiff's subjective complaints when she limited Plaintiff to a reduced range of light work. (Tr. at 479-87). The ALJ then properly assessed the intensity and persistence of Plaintiff's symptoms to determine that his remaining subjective allegations were not entirely credible because they were inconsistent with the testimony of the medical expert, Dr. Goldstein, Plaintiff's relatively normal medical records prior to his date last insured, his daily activities, and the fact that he appeared to continue work activity after the alleged onset date. (Tr. at 479-87).

Substantial evidence supports the ALJ's evaluation of Plaintiff's credibility. The ALJ provided substantial evidence for his evaluation of Plaintiff's subjective symptoms when he considered and gave substantial weight to Dr. Goldstein's

expert medical testimony. (Tr. at 484-86, 498-512). The opinions of medical experts in the Social Security disability programs, even though they do not examine patients, may still be entitled to great weight. *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p. Their opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by the evidence in the record. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(e)(2)(i), (iii); SSR 96-6p. Dr. Goldstein testified in September 2014 that he reviewed Plaintiff's entire medical file. (Tr. at 499-500). Dr. Goldstein testified that Plaintiff had medically determinable impairments of non-recurrent melanoma and insulin dependent diabetes myelitis. (Tr. at 500). Dr. Goldstein stated, "[t]here is documentation throughout the chart of the melanoma and not being recurrent. So the real issue is the diabetes." (Tr. at 501). Regarding diabetes, Dr. Goldstein testified that Plaintiff's medical records from March 2011, which was 15 months after Plaintiff's date last insured, indicated that he had peripheral neuropathy, but there was no mention of this manifestation prior to the date last insured. (Tr. at 501). Dr. Goldstein further testified that Plaintiff's medical records do not document any functional limitations related to his diabetes prior to the date last insured. (Tr. at 502). Dr. Goldstein noted that while diabetes was documented as far back as 1998, "[t]he diabetes alone is not a

reason for impairment." (Tr. at 503). Dr. Goldstein's testimony contradicted Plaintiff's allegations of disabling limitations.

The ALJ further supported her credibility determination when she discussed Plaintiff's treatment records in detail, noting that those records reflected relatively mild objective findings with few limitations. (Tr. at 480-82). *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 16-3p; *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that a claimant's conservative treatment history supports the ALJ's decision). For example, the ALJ noted that while Plaintiff underwent a wide excision of a malignant mole in March 2005 (tr. at 193-94), in April 2005, Dr. Knowling reported Plaintiff's surgical wounds were healing properly. (Tr. at 200, 480). Again in May 2005, the ALJ noted that Dr. Knowling reported, "[t]here is all evidence of proper healing." (Tr. at 276, 480). By August 2005, the ALJ noted that Dr. Knowling reported Plaintiff's excisions "have healed nicely." (Tr. at 198, 480). These records contradict Plaintiff's assertion that his excision wounds prevented him from moving his arm and neck for a significant period of time. (Tr. at 46). With regard to Plaintiff's diabetes, the ALJ noted that in October 2005, Plaintiff continued taking only oral medication for diabetes. (Tr. at 454, 481). In November 2005, Dr. Gualtieri, reported Plaintiff was "doing well and has an excellent appetite." (Tr. at 231). Plaintiff had no problems on exam and had no suspicious

moles and no peripheral edema; and Dr. Gualtieri did not mention any complications related to diabetes. (Tr. at 231). In January 2006, Dr. Knowling reported Plaintiff had good energy levels and no recurrence of melanoma. (Tr. at 198). In May 2006, the ALJ noted that Dr. Gualtieri reported Plaintiff was "doing well" with no concerning moles and no pain. (Tr. at 230, 481). Plaintiff remained active, had no peripheral edema, no recurrence of melanoma, and no noted limitations related to diabetes. (Tr. at 230). Again in August 2006, Dr. Knowling reported Plaintiff had good energy levels and there was no recurrence of melanoma. (Tr. at 198). Likewise, in December 2006, the ALJ noted that Dr. Gualtieri reported Plaintiff was "doing well" with no significant health problems. (Tr. at 229, 481). He had no pain, no peripheral edema, no evidence of recurrent melanoma, and no noted limits related to diabetes. (Tr. at 229). Again in June 2007, December 2007, and June 2008 Dr. Guiltieri reported Plaintiff was "doing well," had no recurrence of melanoma, no edema in his extremities, and no noted limitations related to diabetes. (Tr. at 226-28). While Dr. Gualtieri noted Plaintiff started insulin injections, he also reported Plaintiff "is enjoying stable health" and "stays active." (Tr. at 224). Also in May and October 2009, the ALJ noted Plaintiff reported exercising daily and walking 30 minutes at a time. (Tr. at 256, 482). In

January 2010 Dr. Gualtieri noted Plaintiff "appears to be in stable health." (Tr. at 266).

In sum, Plaintiff's subjective complaints were inconsistent with the normalcy of his medical records prior to his date last insured. The medical records indicate that while Plaintiff was treated for melanoma, it never recurred, and Plaintiff properly healed. (Tr. at 198.) Further, Dr. Gualtieri met with Plaintiff on a regular basis, and never reported any significant health problems. (Tr. at 229.) The only limitations evinced by the records relate to Plaintiff's need to take insulin and to limit sun exposure; otherwise, the plaintiff appeared to have good health prior to his date last insured.

Finally, Plaintiff's subjective complaints were inconsistent with the information gathered from his own recounting of his daily activities. Indeed, Plaintiff continued working for four years after his alleged onset date. While not dispositive, the ALJ may consider a claimant's self-reported daily activities in making a credibility finding. *See Dyer*, 395 F.3d at 1212.

Accordingly, substantial evidence supports the ALJ's credibility finding.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Underwood's arguments, the Court finds the Commissioner's decision is

supported by substantial evidence and in accord with the applicable law. A separate

order will be entered.

**DONE** AND **ORDERED** ON MARCH 7, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704